NATHANIEL BUCKMASTER *et al.*, plaintiffs in error, *v.* JOHN JACKSON, *ex dem.* William Carlin, defendant in error.

*Error to Madison.*

The rule in relation to judgments is, that if the court has jurisdiction of the parties, and subject matter of the controversy, and the party against whom the judgment is rendered, has had either actual or constructive notice of the pendency of the suit, no error can render the judgment void. But where the jurisdiction over the person, or subject matter, does not exist, the judgment is a nullity.

A judgment or execution, irreversible by a superior court, cannot be declared a nullity by any authority of law, if it has been rendered by a court of competent jurisdiction over the parties, and the subject matter, with authority to use the process it has issued. It must remain the only test of the respective rights of the parties to it.

A purchaser, under a judicial sale, is not bound to look beyond the decree, when executed by a conveyance, nor further back than the order of the court, where the facts necessary to give the court jurisdiction appear on the face of the record.

Where, upon a mortgage made to the old State Bank of Illinois, a judgment had been rendered in favor of the bank, upon a proceeding, by *scire facias*, to foreclose the mortgage, and the mortgaged premises had been sold by virtue of the judgment, and an execution issued thereon, to a third person; and subsequently the Supreme Court had declared the act creating the bank unconstitutional: *Held*, that the judgment was valid, till reversed, and that the title of the purchaser, under such judgment, could not be impeached, in an action of ejectment, upon the ground that the bank was unconstitutional.

In an action of ejectment, it is unnecessary for a party who claims title under a sale of the premises upon execution, issued upon a judgment, rendered upon a mortgage, to prove either the mortgage, writ of *scire facias*, or other proceeding anterior to the judgment, as they became part of the record, by the judgment, which proves itself.

THIS cause was heard in the Court below, at the August term, 1840, before the Hon. Sidney Breese. It was brought to this Court by writ of error.

S. T. LOGAN, WM. MARTIN, and GEO. T. M. DAVIS, for the plain-

tiffs in error, cited 1 Peters 340–1 ; 2 Peters 162, 169 ; 6 Peters 19, 729, 730 ; 9 Peters 28 ; 10 Peters 469, 478 ; 1 Scam. 526.

M. McConnel and A. Cowles, for the defendant in error, cited 4 Peters 437, 440–2 ; Linn *v.* State Bank, 1 Scam. 87 ; Voorhees *v.* U. S. Bank, 10 Peters 474 ; Salk. 599 ; 8 Coke 118 ; 1 Kent's Com. 448, 451 ; 1 Bay 252 ; Hook *v.* Henderson, 4 Dev. N. C. R. 15 ; 2 Kent's Com. 7, 11 ; Smith *v.* Rice, 11 Mass. ; Curtis *v.* Swearingen, Breese 99 ; Williams *v.* Peyton's Lessee, 4 Peters' Cond. R. 395 ; U. S. *v.* Fisher *et al.*, 1 Peters' Cond. R. 421 ; Blair *v.* Worley, 1 Scam. 178 ; Betts *v.* Menard, Breese's App. 10.

Smith, Justice, delivered the opinion of the Court : (1)

This was an action of *ejectment*, to recover the possession of three hundred and twenty acres of land, situated in Madison county. The plaintiff, in the Circuit Court, sought to recover, under a title deduced from a person, as grantor, of the name of Pruitt, the original patentee from the United States. The defendants relied on the same source of title, deduced from a judicial sale, made under and by virtue of a judgment and execution of the Circuit Court, in which the present cause was litigated, the judgment having been rendered against the said Pruitt, anterior to the conveyance by Pruitt to the lessor of the plaintiff. The plaintiff, in the Circuit Court, having offered his evidence, and rested his case, the defendants, in order to establish their right of possession, and title to the lands in question, offered to produce and read in evidence, a mortgage made by Pruitt, the patentee of these same lands, to the President and Directors of the State Bank of Illinois, created in 1821, of the date of the 6th of August, 1822, duly executed and recorded, according to law.

They likewise offered to produce, and read in evidence to the jury, the following, as evidence on the part of the defence, and to establish their title and right to the possession of the land in controversy :

*First.* Two writs of *scire facias*, issued from the Madison Circuit Court, returnable to two different terms of the Court, in 1826, founded on the said mortgage, with the returns thereon, being those issued in the cause.

*Second.* The record of a final judgment against Pruitt, regularly obtained in said Court, by the President and Directors of the State Bank, at the August term of the Court, in 1826, showing that the process had been duly and legally returned, which return

(1) The decision, in this case, was made by Chief Justice Wilson, and Justices Browne, Lockwood, and Smith, who composed the Supreme Court, under its former organization ; the cause having been argued before the accession of the new Justices. The subsequent cases decided by the Justices composing the old Court, will be indicated by inserting the word (old) before Court.

showed constructive notice of the pendency of the suit to the defendant, Pruitt.

*Third.* A regular special writ of execution, issued under and by virtue of such judgment, and also a levy and appraisement, according to law, as appears by the return of the sheriff to such execution, by which he was commanded to sell the mortgaged premises; and a deed from the sheriff of Madison county to one Christopher Stout, dated the 11th day of February, 1828, for the said premises, in pursuance of a sale made to said Stout, under and by virtue of the execution aforesaid; which deed was duly acknowledged and recorded, the 26th of August, 1833.

*Fourth.* The defendants further offered to read in evidence a portion of the records of the recorder's office of Madison county, to show a deed executed to one of the defendants, by Esther Pruitt, the widow of Abraham Pruitt, the grantor, under whom the plaintiff claimed, of her life estate, in the premises, which offer was predicated on an affidavit of one of the defendants of the loss of the original.

The Circuit Court refused to admit the evidence offered, and excluded the same, to which decision the defendants excepted; and this decision, excluding all the evidence offered, is now assigned as the grounds of error.

The counsel for the defendant in error contend that the judgment, under which the judicial sale was made, was absolutely void, because this Court has, at a time subsequent to the obtention of the judgment offered in evidence, in another case, between another person and the same President and Directors of the State Bank, declared that the contract between those parties, on which a judgment had been rendered in one of the Circuit Courts of this State, was void, said contract being in violation of that clause of the Constitution of the United States, which prohibits the States from emitting bills of credit, such bills having been the consideration of that contract.

If this was the only ground, as it seems to be admitted it was, upon which the evidence offered was rejected, it is unquestionably an insufficient one, and does not justify that exclusion.

Upon what principle a judgment, rendered by a court of competent jurisdiction, as the Circuit Court of Madison county confessedly is, having jurisdiction of the person, and over the subject matter, on which it adjudicated, and the party against whom its judgment is rendered having had actual or constructive notice of the pendency of the action, can be declared a nullity, is not perceived.

The rule, as it is understood in reference to valid and void judgments, is, whether, or not, the tribunal before whom the parties are called, has jurisdiction of the persons and the subject matter of the controversy; and whether, or not, the party against whom judgment is rendered, has had either actual or constructive notice

of the pendency of the suit. If the jurisdiction attaches, and notice is given, no errors or irregularities, which may have been committed during the progress of the cause, can render the judgment void.

In case of errors or irregularities occurring, they are to be corrected, either by an application to the tribunal where they arise, or in an appellate court, by some direct proceeding between the parties.

On the contrary, where this jurisdiction over the person, or subject matter, does not exist, the judgment is a mere nullity; decides nothing; concludes no one; and may be rejected, when collaterally drawn in question.

In the case before us, it is manifest that the laws of the State, by which the bank was created, and made a corporation, had conferred on it full power to contract, and be contracted with, and also to sue in its corporate name.

The bank had, therefore, a right to apply to the forum, which it sought, for a remedy to enforce the contract made with it, in the case where the mortgage was given as a security for the performance of that contract, and it had an equal right, in the due course of law, to the judgment obtained in its favor, no objection being raised to the constitutionality of its creation.

The defendants, then, depended on that judgment, the levy, and the sale and deed of the sheriff, to substantiate their title to the premises; and it was not competent for the Circuit Court, in such a case, under a judicial sale, to permit a collateral enquiry into the question, whether the original contract of mortgage, and the reception of the bills of the bank by the mortgagor, was a contract void in itself, because in the making of the contract, and the issue and circulation of the bills, the parties did acts in violation of, and conflict with, that provision of the Constitution of the United States prohibiting the States from issuing bills of credit; much less to declare such judgment void in such collateral enquiry.

The party, against whom the judgment had been rendered, had been content; he was satisfied with the result of the proceedings. He had neither urged injustice nor illegality in the rendition of the judgment and subsequent proceedings. If so, shall a person, neither a party, nor a privy to the judgment, be allowed collaterally to destroy the effect of the judgment, and acts done under it? nay, to destroy not only the fruits of the judgment, but the judgment itself? He had notice of the judgment and sale, from the records of the public offices, and took his conveyance from his grantor, with a full knowledge of all the preëxisting facts, and consequently purchased at his peril.

If grounds of reversal really exist, for the reasons supposed, the judgment could alone be reversed by a proceeding upon a writ of error, in this Court; until this is done, it must be considered valid and binding. When a court has jurisdiction, it has a right to decide

every question that arises in the cause, and whether the decision be correct or not, its judgment, until reversed, is regarded as binding in every other court. (1)    Where the facts necessary to give jurisdiction appear on the face of the proceedings, the purchaser is not bound to look beyond the decree, when executed by a conveyance, nor further back than the order of the court.    If the jurisdiction was improvidently exercised, or in a manner not warranted by the evidence before it, it is not to be corrected at the expense of the purchaser, who had a right to rely on the order of the court, as an authority emanating from a competent jurisdiction. (2)

In the case of the United States *v.* Arredondo, it was laid down as an universal principle, that when power or jurisdiction is delegated to any public officer, or tribunal, over a subject matter, and its exercise is confided to his or their discretion, the acts so done are valid and binding, as to the subject matter, and individual rights will not be disturbed collaterally, for anything done in the exercise of that discretion, within the authority and power conferred.

The only questions which can arise between an individual claiming a right, under the acts done, and the public, or any person denying their validity, are, power in the officer, and fraud in the party.    All other questions are settled by the decision made, or the act done, by the tribunal, or officer, unless an appeal or other revision of their proceedings is prescribed by law. (3)    In the case of Hollingsworth *v.* Barbour and others, (4) the Supreme Court of the United States held the principle too well settled, and too plain to be controverted, that a judgment or decree pronounced by a competent tribunal, against a party having actual or constructive notice of the pendency of the suit, is to be regarded by every other coördinate tribunal; and that if the judgment or decree be erroneous, the error can only be corrected by a superior or appellate tribunal.

The leading distinction is between judgments and decrees merely void, and such as are voidably only.    The former are binding nowhere; the latter every where, until reversed by a superior authority.    In the case of Voorhees *v.* Bank of the United States, decided in the Supreme Court of the United States in 1836, which was an action of ejectment, the remarks contained in the opinion of Mr. Justice Baldwin, who pronounced the decision of the Court, are, in many parts of his opinion, so directly appropriate to the case at bar, that I feel it will be both serviceable and satisfactory to transcribe many of them.    " Though," said he, " the able and ingenious argument of the defendants has not been directed at this part of the judgment of the Court of Common

(1) 1 Peters 340 ; 2 Peters 169.          (2) 10 Peters 478 ; 2 Peters 163, 168.
(3) 6 Peters 729, 730.                     (4) 4 Peters 471.

Pleas, the grounds of objections are broad enough to embrace it ; for, resting their case on the only portion which the record leaves them, they necessarily affirm the general proposition, that a sale by order of a court of competent jurisdiction, may be declared a nullity, in a collateral action, if the record does not show affirmatively the evidence of a compliance with the terms prescribed by law, in making such sale.

" We cannot hesitate in giving a distinct and unqualified negative to this proposition, both on principle and authority, too well and long settled to be questioned. That some sanctity should be given to judicial proceedings, some time limited, beyond which they should not be questioned ; some protection afforded to those who purchase at sales by judicial process, and some definitive rules established, by which property thus acquired may become transmissible with security to the possessors, cannot be denied. In this country particularly, where property, which within a few years was but of little value, in a wilderness, is now the site of large and flourishing cities, its enjoyment should be at least as secure as in that country where its value is less progressive.

" It is among the elementary principles of the common law, that whoever would complain of the proceedings of a court, must do it in such time as not to injure his adversary by unnecessary delay in the assertion of his right. If he objects to the mode in which he is brought into court, he must do it before he submits to the process adopted.

" If the proceedings against him are not conducted according to the rules of law and the court, he must move to set them aside for irregularity ; or if there is any defect in the form or manner in which he is sued, he may assign those defects specially ; and the court will not hold him answerable till such defects are remedied. But if he pleads to the action generally, all irregularity is waived. And the court decides only on the right of the parties to the subject matter of the controversy ; its judgment is conclusive, unless it appears on the record that the plaintiff had no title to the thing demanded, or that in rendering judgment it has erred in law. All defects in setting out a title, or in the evidence to prove it, are cured, as well as all irregularities which may have preceded the judgment.

" So long as this judgment remains in force, it is, in itself, evidence of the right of the plaintiff to the thing adjudged, and gives him a right to process to execute the judgment : the errors of the court, however apparent, can be examined only by an appellate power ; and, by the laws of every country, a time is fixed for such examination, whether in rendering judgment, issuing execution, or enforcing it, by process of sale or imprisonment. No rule can be more reasonable, than that the person who complains of an injury done him, should avail himself of his legal rights in a reasonable time, or that that time should be limited by law.

" This has wisely been done by acts of limitation on writs of

error and appeals.   If that time elapses, common justice requires that what a defendant cannot do directly, in the mode pointed out by law, he shall not be permitted to do collaterally, by evasion. A judgment, or execution, irreversible by a superior court, cannot be declared a nullity by an authority of law, if it has been rendered by a court of competent jurisdiction of the parties, and the subject matter, with authority to use the process it has issued.   It must remain the only test of the respective rights of the parties to it.

"If the validity of a sale under its process can be questioned for any irregularity preceding the judgment, the court, which assumes such power, places itself in the position of that which rendered it, and deprives it of all power of regulating its own practice, or modes of proceeding in the progress of a cause to judgment.

"If, after its rendition, it is declared void, for any matter which can be assigned for error only on a writ of error or appeal, then such court not only usurps the jurisdiction of an appellate court, but collaterally nullifies what such court is prohibited, by express statute law, from ever reversing.

"If the principle once prevail, that any proceeding of a court of competent jurisdiction, can be declared to be a nullity by any court, after a writ of error or appeal is barred by limitation, every county court or justice of the peace in the Union, may exercise the same right, from which our own judgments or process would not be exempted.

"The only difference, in this respect, between this and any other court, is, that no court can revise our proceedings ; but that difference disappears after the time prescribed for a writ of error or appeal, to revise those of an inferior court of the United States, or any State :  they stand on the same footing in law.

"The errors of the Court do not impair their validity ; they are binding till reversed ; any objection to their full effect, must go to the authority under which they have been conducted.

"If not warranted by the Constitution or law of the land, our most solemn proceedings can confer no right which is denied to any judicial act under color of law, which can properly be deemed to have been done *coram non judice,* that is, by persons assuming the judicial function in the given case, without lawful authority.   The line which separates error in judgment, from the usurpation of power, is very definite ; and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so.   In the one case it is a record importing absolute verity, in the other, mere waste paper.   There can be no middle character assigned to judicial proceedings, which are irreversible for error.   Such is their effect between the parties to

Buckmaster *et al. v.* Carlin.

the suit, and such are the immunities which the law affords to a plaintiff who has obtained an erroneous judgment or execution. It would be a well merited reproach to our jurisprudence, if an innocent purchaser, no party to a suit, who had paid his money on the faith of an order of a court, should not have the same protection under an erroneous proceeding, as the party who derived the benefit accruing from it. A purchaser under judicial process pays the plaintiff his demand on the property sold; to the extent of the purchase money, he discharges the defendant from his adjudged obligation.

" Time has given an inviolable sanctity to every act of the court preceding the sale, which precludes the defendant from controverting the absolute right of the plaintiff to the full benefit of his judgment; and it shall not be permitted that the purchaser shall be answerable for defects in the record, from the consequences of which the plaintiff is absolved. Such flagrant injustice is imputable neither to the common nor statute law of the land." The consequences which must result from a recognition of the principle contended for, and on which the exclusion of the evidence is attempted to be justified, are still more fatal to the rights of the innocent purchaser.

As the time limited by law, for prosecuting a writ of error, on the original judgment had long expired, before the institution of the action in the Circuit Court, in ejectment, a writ of error is barred by the statute of limitation ; consequently, the judgment is irreversible for error, and of course the sale could not be disturbed for the cause upon which it is said the Circuit Court excluded the evidence. Yet in giving effect to the principle contended for, and upon which it is said the Circuit Court acted, it will be seen, that in effect, it would permit the defendant in the original action to recover back the possession and estate, divested by the judicial sale ; and by consequence, the lessor of the plaintiff in the present action also, who is his grantee after judgment and sale under the execution in the original action. This possession and estate the defendant could not have acquired, even if the original judgment had been reversed on a writ of error, for the cause stated.

It will be seen from the authorities already quoted, that if a judgment is reversed for error, it is a principle of common law, incontrovertible and coeval with its existence, that the defendant shall have restitution only of the purchase money paid for his property, which had been sold on execution. The purchaser shall hold the property sold ; and this principle has been consecrated by most, if not all, the States of the Union, by statute.

What could not then be done directly, by the mode pointed out by law, would be permitted to be done collaterally, and by evasion, if the rule contended for should prevail.

We come then to the conclusion as in the last case referred to : " That a judgment or execution irreversible by a superior court,

cannot be declared a nullity by any authority of law, if it has been rendered by a court of competent jurisdiction over the parties and the subject matter, with authority to use the process it has issued. It must remain the only test of the respective rights of the parties to it." It cannot be declared void for any matter which can be assigned for error, only on a writ of error. To do so by a Circuit Court, would be to usurp the jurisdiction of an appellate Court, and to collaterally destroy, and render null what such appellate Court is prohibited, by express statute, from even reversing. The consequences which would follow in the train of such a decision, are so much to be dreaded, as well for their extent as character, that they need only be stated to be avoided.

Much of the evidence offered, such as the mortgage, writs of *scire facias*, and other proceedings antecedent to the judgment, were unnecessary to be produced, as every matter adjudicated upon, as well as the proceedings, became a part of the record, which thenceforth proves itself, without referring to the evidence on which it has been adjudged or sanctioned.

The main question in this case, has, however, we apprehend, been already settled in this Court, by the decision rendered in the case of Mitchell *et al. v.* The State Bank of Illinois, decided in December term, 1838. In that case, " the appellants, being the sureties of other persons, were sued on certain notes which they had signed with their principals, against whom judgments had been rendered. To obtain time for payment, and to liquidate these judgments, the plaintiffs gave other notes in extinguishment of the judgments ; and in the Circuit Court, they attempted to show that the notes on which the judgments had been rendered, were void, having been given for notes of the State Bank, the notes of the bank being bills of credit, issued contrary to the provisions of the Constitution of the United States." This Court held in that case, that " the judgments were a good and valid consideration for the notes." It declared that " the original notes were extinguished by the judgments, and the debts of record, created by the judgments, were, until reversed, a sufficient and legal consideration. Until their reversal, they were, of course, binding ; and the consideration upon which they were rendered, could not be enquired into collaterally.

" It was not, in this action, competent for the Court to admit evidence to impeach the judgments, because they implied verity in themselves, and could not be contradicted ; and being the consideration upon which the note now sued, was founded, the decision of the Circuit Court, in excluding the evidence offered, was justified by the well settled principles of law applicable to evidence." (1)

This case recognises the principles asserted in the present action, and is, we think, a direct and positive affirmance of the positions assumed.

(1) Scam. 526.

We are clear in the opinion that the Circuit Court erred in refusing to permit the evidence offered, to be given in evidence, and direct, for that reason, the judgment to be reversed with costs. It is further ordered, that the cause be remanded to the Circuit Court of Madison county, with instructions to cause a *venire facias de novo* to be awarded.

*Judgment reversed.*